NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| F-U-V-,<br><br>    Petitioner,<br><br>v.<br><br>LUIS SOTO, *in his official capacity as Warden of the Delaney Hall Detention Center, et al.*,<br><br>    Respondents. | Civil Action No. 26-1765 (GC)<br><br>**MEMORANDUM & ORDER** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court on the filing of a counseled petition (Petition) for a writ of habeas corpus pursuant to 28 U.S.C. § 1241 (§ 1241) by F-U-V-, an immigration detainee currently confined at the Delaney Hall Detention Facility ("Delaney Hall") in Newark, New Jersey.[1]  (ECF No. 1 ¶ 12.)  Respondents filed a response to the Petition (ECF No. 4), and Petitioner filed a reply brief (ECF No. 7).  In addition, Petitioner has moved for: (1) a preliminary injunction (Motion for Preliminary Injunction) (ECF No. 8); (2) leave to proceed under a pseudonym and to seal exhibits (Motion for Leave to Proceed under Pseudonym and to Seal Exhibits) (ECF 9); and (3) to amend/correct the Petition (Motion to Amend/Correct Petition) (ECF No. 12).  Petitioner has also submitted a supplemental authority notice.  (ECF No. 10.)

---

[1]     Petitioner names as Respondents (in their official capacities): Luis Soto, warden and administrator of Delaney Hall; Ruben Perez, Field Office Director of the U.S. Immigration and Customs Enforcement ("ICE") Newark Field Office; Todd M. Lyons, Acting Director of ICE; Kristi Noem, the then-Secretary of the United States Department of Homeland Security; and Pamela Bondi, the then-Attorney General of the United States. (ECF No. 1 ¶¶ 16-20.)

Respondents responded to the Motion to Amend/Correct (ECF No. 14), and Petitioner replied (ECF No. 15).

For the reasons stated below, Petitioner's Motion to Amend/Correct and Amended Petition are **GRANTED**. The Court **GRANTS** the unopposed Motion for Leave to Proceed under Pseudonym and to Seal Exhibits. The Motion for Preliminary Injunction is **DENIED** as moot.

Petitioner, a native and citizen of Venezuela, entered the United States at Newark International Airport on January 21, 2023, pursuant to the humanitarian parole program for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV Parole"), with authorization to remain for two years (until January 19, 2025). (ECF No. 5 at 1-2; ECF No. 12-3 ¶ 22.) "[Petitioner's] parole was terminated by its expiration on January 19, 2025." (ECF No 12-3 ¶ 22 (citing ECF No. 12-6).)

On January 13, 2026, ICE arrested Petitioner at a traffic stop. (*Id.* ¶ 28.) A Notice to Appear was issued on February 21, 2026. (*Id.* ¶ 33.) On March 17, 2026, Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture. (*Id.* ¶ 34.) On May 18, 2026, Petitioner's application was denied, and his administrative appeal remains pending before the Board of Immigration Appeals. (*Id.* ¶ 35.)

In his proposed Amended Petition, Petitioner alleges *inter alia* that his detention violates the Immigration and Nationality Act ("INA") because Respondents are wrongfully holding him in mandatory detention under the incorrect statutory provision, *i.e.*, 8 U.S.C. § 1225(b)(2). (*Id.* ¶¶ 49-66, 93-96.) Petitioner asserts that § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility and, in particular, does not apply to those individuals who, like Petitioner, previously entered the country and have been residing in the United States for years prior to their apprehension. (*Id.* ¶ 94.) According to Petitioner, he

2

seeks leave to file an amended petition to allege "additional and statutory violations—specifically Respondents' unlawful application of mandatory detention statute, 8 U.S.C. § 1225." (ECF No. 12-1 at 3.) Petitioner states that "[t]his Court, along with numerous other courts in this District, have acknowledged that 8 U.S.C. § 1225 does not apply to individuals like [Petitioner], who were paroled into the United States under a humanitarian parole program and detained years later without a pre-deprivation hearing." (*Id.* at 3; *see also* ECF No. 12-3 ¶ 95.)

Respondents indicate that the Motion to Amend/Correct should be denied on the grounds of futility and because the Amended Petition is subject to dismissal for the same reasons set forth in Respondents' prior briefing. (ECF No. 14 at 3.) Respondents argue that "Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2) and the [Board of Immigration Appeals's] decision [in] *Matter of Yajure Hurtado*, 29 I&N Dec. 215 (BIA 2025)." (ECF No. 5 at 2; ECF No. 14 at 2.) According to Respondents, Petitioner was not admitted into this country but rather temporarily paroled under the CHNV Parole program, a form of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). (ECF No. 5 at 2; ECF No. 14 at 3.) Section 1182(d)(5)(A) states that release on parole "shall not be regarded as an admission . . . and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served," the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." (ECF No. 5 at 2 n.3; ECF No. 14 at 3 (quoting § 1182(d)(5)(A)).) Respondents argue that that "[n]oncitizens 'who are . . . subject to the "entry fiction" in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude.'" (ECF No. 5 at 2; ECF No. 14 at 3 (quoting *Sanchez v. Soto*, No. 25-19082, 2026 WL 125576, at *2 (D.N.J. Jan. 16, 2026)).

3

The Court agrees with Petitioner that Respondents are unlawfully holding him under the wrong detention provision. Accordingly, the proposed amendment is not futile,[2] and Petitioner is entitled to habeas relief because he is being held in mandatory detention under the incorrect statutory provision.

Initially, this Court has already rejected *Yajure Hurtado*'s interpretation of § 1225(b)(2). In *Chen v. Soto*, No. 25-17198, 2025 WL 3577239 (D.N.J. Dec. 9, 2025), the Court explained why *Yajure Hurtado* was incorrect:

> "The vast majority of courts confronting this precise issue have rejected [R]espondents' interpretation, and the BIA's interpretation in *Hurtado*, as contradictory to the plain text of § 1225." *Perez v. Lyons*, No. 25-17186, [2025 WL 3238540, at *2] (D.N.J. Nov. 19, 2025) (footnote omitted) (collecting cases). In fact, to date, every court in this District to have considered this issue has rejected Respondents' expansive interpretation of § 1225(b)(2)(A). The Court is persuaded by the reasoning of these courts and concludes that § 1226(a)—not § 1225(b)(2)(A)—applies to Petitioner's detention. *See Perez*, 2025 WL 3238540, at *2.
>
> For example, "[i]n [*Rivera Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *7-9 (D.N.J. Sept. 26, 2025)], the District Court analyzed the plain language of 8 U.S.C. § 1225(b)(2)(A) and found that it applies only to noncitizens who are inspected by immigration officials at or near the border or its functional equivalent and not to noncitizens who entered the United States without admission or inspection and were arrested within the interior of the United States." [*Mejia v. Cabezas*, No. 25-17094, 2025 WL 3294405, at *2 (D.N.J. Nov. 26, 2025)]. In addition, as the *Mejia* court observed:
>
>> The District Court [in *Zumba*] noted that "for nearly 30 years, § 1225 has applied to noncitizens who are either seeking entry to the United States or have a close nexus to

---

[2] "Leave to amend should only be denied when it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *N.S. v. Harnad*, No. 21-19820, 2025 WL 600929, at *2 (D.N.J. Feb. 25, 2025) (citing *United States ex rel. Schumann v. Astrazeneca Pham. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). There is no indication that Petitioner has demonstrated undue delay, bad faith, or dilatory motives, or that amendment would prejudice Respondents.

4

> the border, and § 1226 has applied to those aliens arrested within the interior of the United States" and observed that the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) "explicitly adopt[ed] this distinction, describing § 1225 as the detention statute for noncitizens affirmatively 'seeking admission' into the United States, and § 1226 as the detention statute for noncitizens who are 'already in the country.'" [*Zumba*, 2025 WL 2753496, at *9] (citing *Jennings*, 583 U.S. at 289, 138 S.Ct. 830). The District Court in [*Zumba*] further held that the petitioner, who was arrested by ICE in the interior of the United States and had no criminal history, could only be discretionarily detained under 8 U.S.C. § 1226(a), which provides for individualized bond hearings before an immigration judge who must assess flight risk and dangerousness. *See id.* at *6, *11 . . . .
>
> *Id.; see also* [*Lucero v. Soto*, No. 25-16737, 2025 WL 3240895, at *5] (same). This Court agrees with *Zumba* (and *Mejia*). *See Mejia*, 2025 WL 3294405, at *2 ("The Court is persuaded by the District Court's reasoning in [*Zumba*].."); [*Lucero*], 2025 WL 3240895, at *5 (same).

*Id.* at *2-3 (cleaned up).

Furthermore, Respondents note that Petitioner was temporarily paroled under § 1182(d)(5)(A) and contend that, as a humanitarian parolee, he was subject to the "entry fiction" in which he was legally considered as if he remained at the border. (*See* ECF No. 14 at 3 & n.2.) Several courts in this District have indicated that such non-citizens may be lawfully detained under § 1225(b). *See Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *1-2 (D.N.J. Feb. 2, 2026); *Sanchez*, 2026 WL 125576, at *1-2; *Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *1-2 (D.N.J. Jan. 8, 2026). The Third Circuit has not squarely addressed the detention status of former parolees. However, courts in this District have also recently rejected Respondents' interpretation of the humanitarian parole provision. *See Sanchez Correa v. Delaney Hall Detention Facility*, No. 26-4876, 2026 WL 180302, at *2-3 (D.N.J. June 23, 2026); *Guzman v. Bondi*, No. 26-1250, 2026 WL 1534682, at *2-5 (D.N.J. June 1, 2026); *Murillo-Castillo v. Florentino*, No.

5

25-16728, 2026 WL 1383062, at *2-6 (D.N.J. May 18, 2026). For the reasons stated below, this Court rejects Respondents' assertion that Petitioner is subject to mandatory detention under §§ 1225(b)(2) and 1182(d)(5)(A).

Initially, "Respondents argue that once parole ends, Petitioner reverts back to his original mandatory detention status under [§ 1225(b)(2)], but they do not analyze the [text of the] parole statute." *Murillo-Castillo*, 2026 WL 1383062, at *4 (noting that statutory construction begins with the text of the statute). "They fail to address whether "return or be returned to the custody of from which he was paroled' plainly means that the Petitioner returns to the same custody status, i.e., mandatory detention that he held when he entered the United States in [January 2023]." *Id.* (citing *Guevara v. Tsoukaris*, 2026 WL 969261, at *4 (D.N.J. Apr. 9, 2026)).

In contrast to Respondents' failure to address the text of the humanitarian parole provision, a court in the Eastern District of Pennsylvania has persuasively interpreted § 1182(d)(5)(A):

> In *Olimov v. Jamison*, [No. 26-0532, 2026 WL 596155, at *4 (E.D. Pa. Mar. 3, 2026)], the District Court analyzed the return to custody language of § 1182(d)(5)(A) and found that it did not necessarily mean return to physical detention. The District Court noted that the government's argument "assumes that 'return . . . to custody' means a return to detention at the moment before parole, but it provides no analysis to support that interpretation." Because this phrase is not defined in the INA, the District Court in *Olimov* "turn[ed] to the phrase's plain meaning at the time of enactment." *See Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011)); *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (the Court "normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them").

> The District Court observed that

> [w]hen Congress enacted the Immigration and Nationality Act of 1952, it included identical language about a return to custody following parole. *See* Pub.L. 82-414, 66 Stat. 163, 188, § 212(d)(5) (June 27, 1952). [FN omitted.] Then, as now, the statute did not define "*custody*." However, at the time Congress enacted the INA, "custody" could refer to

6

> > charge, control, or possession, as well as detention. *See* Custody, Black's Law Dictionary, 460 (4th ed. 1951). Indeed, the term was "very elastic and [could] mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." *Id.*
>
> *Id.* at *5. The District Court also analyzed other uses of the words "custody" and "detain" in § 1182 [and] found that "Congress's use of the various forms of the word 'detain' demonstrates that, in 1952, when Congress wanted to specify physical custody, it knew the words to use." *Id.* (citing *Bittner v. United States*, 598 U.S. 85, 94 (2023); *Russello v. U.S.*, 464 U.S. 16, 23 (1983)). It found that "'custody' is an elastic term that could have various meanings" and that "it was more prudent to assume that Congress meant custody to refer to control over the alien, as opposed to physical detention." *Id.* at *6 (citing *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 488 (3d Cir. 2017) ("The use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."); *see also Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (finding that return to the custody from which he was paroled does not mean a return to physical detention). The court finds this analysis persuasive particularly in light of Respondents' failure to analyze the relevant language.
>
> Nor do Respondents sufficiently analyze what it means for the noncitizen to be "dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). In recent months, Courts have held that it simply "mandates that [the petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States[,]" and that "any determination as to [petitioner's] detention must be conducted under the discretionary framework of Section 1226(a)." *Qasemi*, 2025 WL 3654098, at *12.

*Id.* at *5.

Likewise, Respondents do not analyze the second part of the provision (stating that "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission"). "In recent months, Courts have held that [this language] simply 'mandates that [the petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States[,]' and that 'any determination as to [petitioner's] detention must be

7

conducted under the discretionary framework of Section 1226(a).'" *Id.* (alterations in original) (quoting *Qasemi*, 2025 WL 3654098, at *12).

Furthermore, the Court notes that Respondents' interpretation of § 1225(b)(2) and § 1182(d)(5)(A) raises serious constitutional concerns because it requires the mandatory detention of noncitizens who have lived in the United States for years and formed significant ties. *See id.* "Therefore, to the extent this Court were to find that [§] 1182(d)(5)(A) and/or § 1225 are ambiguous, it would resort to constitutional avoidance, a doctrine which permits a court to choose 'between competing plausible interpretations of a statutory text.'"[3] *Id.* (quoting *Jennings*, 583 U.S. at 298).

Accordingly, for the foregoing reasons, Petitioner's Motion to Amend/Correct and his Amended Petition are **GRANTED**. Moreover, although 8 U.S.C. § 1226(a) permits discretionary detention of noncitizens based on flight risk or dangerousness, Respondents have detained Petitioner under a flawed interpretation of § 1225(b)(2); this Court will not correct Respondents' unlawful detention under § 1225(b)(2) by converting Petitioner's detention to a 'potentially lawful alternate form under a different statute with different procedural requirements and rules.'" *Alvarez Hererra v. Soto*, No. 26-2482, D.E. No. 6 (D.N.J. Apr. 22, 2026) (quoting *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192, at *2 (D.N.J. Mar. 2, 2026) (granting petitioner's habeas petition and ordering his release based on respondents' flawed application of § 1225(b)(2))); *see also Beteta Beteta v. Blanche*, No. 26- 4132, ECF No. 4 (D.N.J. Apr. 20, 2026) (same). In addition, Petitioner states that his "sole police contact in the United States is for a traffic infraction while

---

[3]    In addition, the Notice to Appear charges Petitioner is "an alien present in the United States who has not been admitted or paroled," as opposed to "an arriving alien." (ECF No. 12-13 at 1.) "Notably, the issuing officer appears to have explicitly declined to designate Petitioner as an 'arriving alien,' which is the active language used to define the scope of Section 1225(b)(2)(A)." *Loja Caguana v. Bondi*, No. 26-3065, 2026 WL 892474, at *2 (D.N.J. Apr. 1, 2026) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025)).

visiting Virginia," and Petitioner's I-213 Record of Deportable/Inadmissible Alien indicates that he has no criminal history. (ECF No. 12-3 ¶ 23; ECF No. 5-1 at 2.) Accordingly, the Court orders Respondents to release Petitioner.[4] In addition, the unopposed Motion for Leave to Proceed under Pseudonym and to Seal Exhibits is **GRANTED,** and the Motion for Preliminary Injunction is **DENIED** as moot.

IT IS, therefore, on this _____ day of August, 2026, **ORDERED** as follows:

1. Petitioner's Motion to Amend/Correct (ECF No. 12) is **GRANTED.**

2. The Clerk of the Court shall file the Amended Petition (ECF No. 12-3).

3. The Amended Petition (ECF No. 12-2) is **GRANTED.**

4. Within twenty-four (24) hours of the time of entry of this Memorandum and Order, Respondents **SHALL RELEASE** Petitioner from immigration detention, subject to the prior terms of supervision, if any, in effect at the time he was detained, and provide written notice to the Court of Petitioner's release from custody.

5. Respondents' unopposed Motion for Leave to File under Pseudonym and to Seal Exhibits (ECF No. 9) is **GRANTED.**

6. Petitioner shall proceed in this action under the pseudonym "F-U-V-".

7. All filings in this matter shall refer to Petitioner by the pseudonym "F-U-V-".

8. The Clerk shall redact Petitioner's name from the caption and replace it with the pseudonym "F-U-V-".

---

[4] Petitioner challenges his detention on other grounds, *i.e.*, that his detention violates 8 U.S.C. § 1254a(d)(4) (stating that an alien provided temporary protected status shall not be detained) and his substantive and procedural due process rights under the Fifth Amendment to the United States Constitution. (ECF No. 12-3 ¶¶ 79–92.) Because the Court concludes that Petitioner is entitled to habeas relief on the grounds that Respondents have unlawfully detained him under the incorrect statutory provision, the Court need not (and does not) address Petitioner's other claims.

9

9.  The Clerk of the Court shall **SEAL** ECF Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14 and 15, and their respective attachments.

10. Within fourteen (14) days of the date of entry of this Memorandum and Order, Petitioner shall re-file redacted versions of the filings referenced above, except for ECF Nos. 1-2 through 1-10 and 8-3, which shall remain under seal.

11. Petitioner's Motion for Preliminary Injunction (ECF No. 8) is **DENIED** as moot.

12. The Clerk of the Court shall **TERMINATE** the Motions pending at ECF Nos. 8, 9, and 12, and **CLOSE** this case.

**GEORGETTE CASTNER**
**United States District Judge**

10